1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TYRELL FOY,

11          Plaintiff,               No. 2:12-cv-02797 KJN PS

12      v.

13   RIPON POLICE OFFICER
     STEPHEN MEECE,

14
            Defendants.              ORDER
15   _____/

16          Plaintiff Tyrell Foy ("plaintiff"), who is proceeding without counsel and in forma

17   pauperis, filed his complaint on November 14, 2012. (Compl., ECF No. 1).[1]  Presently before

18   the court is defendant Stephen Meece's ("defendant") Motion to Dismiss plaintiff's complaint.

19   (Mot. to Dismiss, ECF No. 9.)  Plaintiff filed an opposition to the pending motion.  (Opp'n, ECF

20   No. 13.)  Defendant filed reply briefing in support of his motion.  (Reply, ECF No. 16.)

21          This matter came on for hearing on May 23, 2013.  Attorney Stacy L. Henderson

22   attended on behalf of the defendant.  Plaintiff attended on his own behalf.  The undersigned has

23   considered the briefs, oral arguments, and appropriate portions of the record in this case and, for

24

25          [1]  This matter proceeds before the undersigned as a result of an order dated May 17, 2013,
     and the parties' voluntary consent to the jurisdiction of the undersigned for all proceedings in this
26   case, including trial and entry of final judgment.  (ECF Nos. 8, 17, 19.)  See 28 U.S.C. § 636(c)(1);
     Fed. R. Civ. P. 73; E.D. Cal. L.R. 301, 305.

the reasons stated below, partially grants defendant's motion but gives plaintiff leave to file an amended pleading.

I.      PROCEDURAL BACKGROUND

In an order issued on November 21, 2012, the undersigned screened plaintiff's pleading pursuant to 28 U.S.C. § 1915(e)(2) and ordered service of process upon defendant, a police officer for the City of Ripon.[2]  (Order, ECF No. 3.)  Through his attorney, defendant filed the pending Motion to Dismiss on March 11, 2013.  The motion was set to be heard on April 18, 2013.  When plaintiff did not timely file any written opposition or statement of non-opposition to that motion, the undersigned issued an Order to Show Cause ("OSC"), which required plaintiff to explain his inaction and to file an opposition or statement of non-opposition by May 1, 2013. (OSC, ECF No. 12.)  Plaintiff timely complied with the OSC and filed an opposition and an explanation for his delay.  (ECF Nos. 13-14.)

II.     LEGAL STANDARDS

A.      Rule 12(b)(6)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Federal pleading standards require the presentation of factual allegations sufficient to state a plausible claim for relief as to each defendant.  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) ("[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of civil rights").  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

[2] For reasons stated within his Order, the undersigned did not order service upon the "Ripon Police Department."  (ECF No. 3.)

The mere possibility of misconduct falls short of meeting this plausibility standard.  Twombly, 550 U.S. at 545.  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555) (citations and internal quotations omitted).

A complaint should be dismissed for failure to state a claim if, taking all well-pleaded factual allegations as true, it does not contain "'enough facts to state a claim to relief that is plausible on its face.'"  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Iqbal,556 U.S. at 678-79).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal,556 U.S. at 678-79).  The court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen v. CNF Inc, 559 F.3d 1061, 1071 (9th Cir. 2009) (citations and quotation marks omitted).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir.

1  2003) (citing <u>Orion Tire Corp. v. Goodyear Tire & Rubber Co.</u>, 268 F.3d 1133, 1137-38 (9th Cir.

2  2001)).

3         The court must construe a pro se pleading liberally to determine if it states a claim

4  and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and provide an opportunity

5  to cure those deficiencies if it appears at all possible that the plaintiff can do so.  <u>See Lopez v.</u>

6  <u>Smith</u>, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); <u>accord Balistreri v. Pacifica Police</u>

7  <u>Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

8  particularly where civil rights claims are involved"); <u>see also</u> <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342

9  & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

10 evaluating them under <u>Iqbal</u>.).

11        B.    <u>42 U.S.C. § 1983; Fourth And Fourteenth Amendments</u>

12             The Civil Rights Act provides as follows:

13                  Every person who, under color of [state law] . . . subjects, or
                    causes to be subjected, any citizen of the United States . . . to the
14                  deprivation of any rights, privileges, or immunities secured by
                    the Constitution . . . shall be liable to the party injured in an
15                  action at law, suit in equity, or other proper proceeding for
                    redress.
16

17 42 U.S.C. § 1983.[3]

18             Generally, with respect to individual defendants, such as Officer Meece, "Section

19 1983 imposes civil liability on an individual who "under color [of state law] . . . subjects, or

20 causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

21 privileges or immunities secured by the Constitution and laws." <u>Franklin v. Fox</u>, 312 F.3d 423,

22

23        [3]  The Fourteenth Amendment does not create a direct cause of action.  <u>E.g.</u>, <u>Hughes v.</u>
   <u>Bedsole</u>, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995).  Instead, § 1983 provides a statutory cause of action
24 for all citizens injured by an abridgment of the protections contained in the Constitution, including
   the Equal Protection and Due Process Clauses of the Fourteenth Amendment.  <u>Collins v. City of</u>
25 <u>Harker Heights, Tex.</u>, 503 U.S. 115, 119-20 (1992); <u>Engquist v. Oregon Dep't of Agric.</u>, 553 U.S.
   591, 611 (2008) (reiterating that "§ 1983 provides a cause of action for all citizens injured by an
26 abridgment of [the] protections" found in the "Due Process Clauses of the Fourteenth Amendment,
   and other provisions of the Federal Constitution").

1  444 (9th Cir. 2002) (citing 42 U.S.C. § 1983).  "To state a claim under § 1983, a plaintiff must

2  allege two essential elements: (1) that a right secured by the Constitution or laws of the United

3  States was violated, and (2) that the alleged violation was committed by a person acting under the

4  color of State law."  Long v. Cnty. of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v.

5  Atkins, 487 U.S. 42, 48 (1988)); accord Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624

6  (9th Cir. 1988) ("To make out a cause of action under section 1983, plaintiffs must plead that (1)

7  the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the

8  Constitution or federal statutes") (citation omitted).

9          The Fourth Amendment, which applies to the states through the Fourteenth

10  Amendment, protects against unreasonable searches and seizures by law enforcement officers.

11  Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 n.2 (9th Cir. 2002) (citing Mapp v. Ohio,

12  367 U.S. 643, 655 (1961)).  The Fourth Amendment requires law enforcement officers to have at

13  least a reasonable suspicion of criminal activity before making a brief investigatory stop (a

14  "Terry stop").  See Terry v. Ohio, 392 U.S. 1, 9 (1968); United States v. Johnson, 581 F.3d 994,

15  999 (9th Cir. 2009) ("Police may detain or seize an individual for brief, investigatory purposes,

16  provided the officers making the stop have reasonable suspicion that criminal activity may be

17  afoot.") (citing United States v. Orman, 486 F.3d 1170, 1173 (9th Cir. 2007)) (internal quotation

18  marks omitted).  "Reasonable suspicion is formed by specific, articulable facts which, together

19  with objective and reasonable inferences, form the basis for suspecting that the particular person

20  detained is engaged in criminal activity."  Johnson, 581 F.3d at 999 (citing United States v.

21  Thompson, 282 F.3d 673, 678 (9th Cir. 2002)) (internal quotation marks omitted).  During a

22  Terry stop, "the officer may ask the detainee a moderate number of questions to determine his

23  identity and to try to obtain information confirming or dispelling the officer's suspicions."

24  United States v. Davis, 530 F.3d 1069, 1081 (9th Cir. 2008) (quoting Berkemer v. McCarty, 468

25  U.S. 420, 439 (1984)).  In determining whether a stop was justified by a reasonable suspicion, the

26  court considers whether, in light of the totality of the circumstances, law enforcement had "a

particularized and objective basis for suspecting the particular person stopped of criminal

activity." United States v. Berber-Tinoco, 510 F.3d 1083, 1087 (9th Cir. 2007) (quoting United

States v. Cortez, 449 U.S. 411, 417–18 (1981)).  For purposes of this analysis, the totality of the

circumstances includes "objective observations, information from police reports, if such are

available, and consideration of the modes or patterns of operation of certain kinds of

law-breakers."  Id. at 1087.

　　　　　　　With respect to due process claims under the Fourteenth Amendment, "[a]

procedural due process claim has two elements: deprivation of a constitutionally protected liberty

or property interest and denial of adequate procedural protection."  Krainski v. Nev. ex rel. Bd. of

Regents of Nev. Sys. of Higher Educ., 616 F.3d 963, 970 (9th Cir. 2010) (citing Brewster v. Bd.

of Educ. of the Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998)); accord Thornton

v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005) ("A procedural due process claim

hinges on proof of two elements: (1) a protectible liberty or property interest . . . ; and (2) a denial

of adequate procedural protections.") (citation and quotation marks omitted).  In regards to a

substantive due process claim, the "Due Process Clause of the Fourteenth Amendment protects

against any government conduct that 'shocks the conscience.'"  Crowe v. City of San Diego, 608

F.3d 406, 431 (9th Cir. 2010) (citation omitted); see also Krainski, 616 F.3d at 969 ("The

guarantee of substantive due process provides heightened protection against government

interference with certain fundamental rights and liberty interests.") (citation and quotation marks

omitted); Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2008) ("Substantive due process

forbids the government from depriving a person of life, liberty, or property in such a way that

'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'")

(citations and quotation marks omitted).  "To state a substantive due process claim, the plaintiff

must show as a threshold matter that a state actor deprived [him] of a constitutionally protected

life, liberty or property interest."  Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008).

////

1    With respect to equal protection claims under the Fourteenth Amendment, "[t]o

2    state a § 1983 claim for violation of the Equal Protection Clause[,] a plaintiff must show that the

3    defendants acted with an intent or purpose to discriminate against the plaintiff based upon

4    membership in a protected class." Thornton, 425 F.3d at 1166 (citation and quotation marks

5    omitted); see also Enquist v. Ore. Dep't of Agric., 553 U.S. 591, 601 (2008) ("Our equal

6    protection jurisprudence has typically been concerned with governmental classifications that

7    affect some groups of citizens differently than others.") (citation and quotation marks omitted).

8    The court must first identify the defendant's classification of groups, and the "groups must be

9    comprised of similarly situated persons so that the factor motivating the alleged discrimination

10   can be identified." Thornton, 425 F.3d at 1166-67.

11   III.    DISCUSSION

12           A.      Allegations In The Complaint

13           Plaintiff's complaint alleges violations of his constitutional rights and 42 U.S.C. §

14   1983.  In general, plaintiff alleges that, even though plaintiff "never showed any signs of threat[]

15   or suspicion[,] [n]or was he combative," defendant searched him and his vehicle without

16   probable cause, engaged in "racial[] profiling," used racial "slurs and phrases," and said "obscene

17   racial things" to plaintiff.  (Compl., ECF No. 1 at 1-6.)

18           More particularly, plaintiff alleges that on May 16, 2012, he had driven to a "Quik

19   Stop" gas station and was "entering the store" on foot when defendant "advised" plaintiff to

20   approach him.  (Compl. at 4.)[4]  Plaintiff alleges that he raised his hands and said "I didn't do

21   anything wrong," and that defendant allegedly stepped out of his car and asked plaintiff "what are

22   [you] doing in my town?"  (Id.)  Plaintiff alleges that defendant asked him whether a nearby jeep

23   was plaintiff's vehicle, to which plaintiff allegedly responded "Yes Sir[;] what does my car have

24   _____

25          [4]  The Complaint's internal page numbering does not match up with the page numbers the
     Clerk of the Court stamped at the top of each page of the document when it was filed.  Unless
     otherwise stated herein, the undersigned references the page numbers stamped at the top of each page
26   of the Complaint, i.e., the page numbers provided by the Clerk of the Court.

to do with me at this time?"  (Id.)  Defendant allegedly responded, "There's no need to question

me," and allegedly ordered plaintiff to interlock his fingers.  (Id.)  Defendant then allegedly

began to search plaintiff's person.  (Id.)  When defendant allegedly felt "an object" in plaintiff's

pocket, he allegedly said "Whoa, what's this[,] your crack pipe?"  (Id.)  Plaintiff allegedly

responded that it was his Bluetooth.  (Id.)

Thereafter, defendant allegedly "put [plaintiff] in the back seat" of defendant's

police car and ran plaintiff's license plates.  (Id.)  Defendant allegedly learned that plaintiff had a

suspended driver's license and told plaintiff his car would be impounded and to "call for pick

up."  (Id.)  Defendant allegedly told plaintiff to "take off [his] doo rag" in an "aggressive" way,

and that he would be arrested if he did not do so.  (Id. at 4-5.)  Defendant allegedly took

plaintiff's picture.  (Id. at 5.)  Defendant also allegedly knelt down by plaintiff's tires,

commented on plaintiff's "nice rims," and allegedly smirked.  (Id.)  Plaintiff alleges that:

> Officer Meece [did] not use his procedures correctly during a stop.  I
> was not driving; nor did he pull me over.  There was no traffic stop, I
> was at the gas pump for about 2 good minute[s] [and] a half when he
> pulled up.  He had no probable cause to tow nor stop me.

(Id. at 5.)  Plaintiff alleges that he did not "break any traffic laws."  (Compl. at 6 (emphasis

omitted).)  Plaintiff also alleges that he was "determined not to be under the influence of

marijuana," as evidenced by defendant's police report.  (Compl. at 6.)  Plaintiff notes that "upon

searching plaintiff's vehicle, Officer Meece found no signs of drugs, weapons, nor contraband

. . ."  (Id.)

Plaintiff alleges that he was driving on a suspended license, that defendant

discovered as much after running plaintiff's license plates, and that defendant had plaintiff's car

towed thereafter.  (Id. at 4.)

Plaintiff attached to his pleading a copy of the Police Report defendant allegedly

drafted in connection with this incident.  (Id. at 7 ("Police Report").)  The Police Report

describes defendant's version of the incident, namely, that defendant "contacted" plaintiff only

1   after defendant drove by plaintiff's vehicle and after defendant "smell[ed] an overwhelming odor

2   of marijuana coming from" it.  (Id.)

3       B.       Defendant's First Argument: The Police Report Confirms Defendant's Conduct
                 Was Reasonable
4

5           Defendant argues that the Police Report attached to the complaint "establishes"

6   that defendant "had both reasonable suspicion and probable cause" to detain and search plaintiff

7   and his vehicle, such that plaintiff "has not sufficiently plead" a violation of the Fourth

8   Amendment or 42 U.S.C. § 1983.  (Mot. to Dismiss at 1.)  Defendant argues that the Police

9   Report "establishes" that defendant searched plaintiff only *after* defendant smelled "an

10  overwhelming odor of marijuana" from plaintiff's car, and therefore that defendant "had both

11  reasonable suspicion and probable cause" to detain plaintiff and search both him and his car "for

12  marijuana."  (Id. at 5-6.)  Defendant argues that, given the truthful content of the Police Report,

13  "[p]laintiff cannot establish that [defendant] violated the Fourth Amendment by conducting an

14  unreasonable search and seizure because [defendant] had both reasonable suspicion and probable

15  cause to conduct the search and seizure and because the scope of both the search and seizure

16  were reasonable."  (Id. at 4.)  In a nutshell, according to defendant, "[a]lthough [p]laintiff's

17  [c]omplaint alleges [defendant] violated the Fourth Amendment in detaining or searching

18  [p]laintiff, the police report [p]laintiff attached to the [c]omplaint *proves otherwise*."  (Id. at 6

19  (emphasis added).)

20          Defendant's above-described argument is premised upon the truth of the factual

21  content of the Police Report attached to plaintiff's pleading.  However, the undersigned cannot

22  determine at this procedural posture that defendant's conduct was "reasonable" or "justified" as a

23  matter of law.  (Mot. to Dismiss at 5-6.)  While a court may assume the truth of documents

24  attached to a pleading in analyzing a motion to dismiss under Federal Rule of Civil Procedure

25  12(b)(6), a court may do so only where the pleading's allegations are "conclusory" and

26  "contradicted" by the document(s) attached to the pleading.  See Paulsen, 559 F.3d at 1071 ("We

9

are not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint . . . .").  In this particular case, however, which involves a litigant proceeding without counsel and in forma pauperis and raising constitutional claims, defendant has not compellingly shown that every statement within the Police Report should be taken as true for purposes of analyzing a motion to dismiss under Rule 12(b)(6).

During the hearing, the undersigned asked plaintiff whether he agreed with all of the factual representations in the Police Report that he attached to his pleading.  In particular, the undersigned asked plaintiff whether he agreed with the Police Report's representation that defendant contacted plaintiff only after smelling the odor of marijuana coming from plaintiff's vehicle.  Plaintiff stated on the record that he disputes the Police Report's content, including the representation that defendant ever perceived the odor of marijuana to be coming from plaintiff's car.  Accordingly, given plaintiff's statements during the hearing, the undersigned finds that plaintiff did not intend to endorse or adopt as true the factual content of the Police Report by attaching it to his pleading.

Also during the hearing, defendant's counsel argued that despite plaintiff's verbal clarification that he disputes the Police Report's representations, the fact remains that *plaintiff's pleading itself* does not squarely contradict the Police Report in the same manner.  Defendant's counsel argues that the court's analysis of the pending motion to dismiss is limited solely to the content of plaintiff's pleading.

Plaintiff's pleading does not squarely dispute *all* of the Police Report's factual representations; however, it neither squarely endorses the Police Report nor purports to adopt its contents as true.  Construing plaintiff's pleading liberally, it indirectly disputes several aspects of the Police Report: plaintiff alleges that he was "determined not to be under the influence of marijuana" and was not violating the law or being combative, but that defendant searched him anyway, and that defendant made comments regarding plaintiff's "doo rag," "crack pipe," and "rims," which plaintiff believes indicate that defendant's conduct was improperly motivated by

race and not by reasonable suspicion or probable cause.  (Compl. at 4-6.)  Further, plaintiff is a pro se litigant whose pleading must be liberally construed at this procedural posture, and who may not have been aware that attaching the Police Report to his pleading could potentially be construed as his endorsement of that document's contents.

While defendant's moving papers repeatedly argue that the Police Report "establishes" or "proves" defendant acted properly, defendant's briefing fails to compellingly support the argument.  (Mot. to Dismiss at 1, 3-6.)  Defendant cites only to the <u>Paulsen</u> case in arguing that, for purposes of a Rule 12(b)(6) motion, the court should accept as true the factual contents of documents attached to the complaint.  (Mot. to Dismiss at 6 (citing <u>Paulsen</u>, 559 F.3d at 1071).)  Yet defendant did not meaningfully discuss <u>Paulsen</u> or attempt to analogize to it, and <u>Paulsen</u> did not involve a police report attached to a pro se litigant's civil rights complaint. <u>Paulsen</u>, 559 F.3d at 1071.

Defendant did not cite to any cases holding that, in analyzing *a motion to dismiss* a pro se pleading alleging police violations of constitutional rights, the court must *accept as true* the contents of a police report attached to that pleading.  Indeed, when analyzing motions to dismiss pro se pleadings, district courts have declined to accept the factual contents of police reports and similar documents over the factual allegations in a pleading, even where the police reports and similar documents are attached to the complaint.  <u>See</u>, <u>e.g.</u>, <u>Grant v. Knipp</u>, No. 2:11–cv–2302 KJN P, 2012 WL 2839832, at *3 (E.D. Cal. July 9, 2012) (unpublished) (recommending denial of motion to dismiss pro se plaintiff's pleading and explaining that "[t]he fact that plaintiff has attached to his complaint documents showing prison officials found defendants's use of force was justified does not mean plaintiff has adopted as true all of the statements in those documents, where it is clear from the allegations in the complaint that he contests such findings."), <u>adopted by</u> 2012 WL 3880197 (E.D. Cal. Sept. 6, 2012) (unpublished); <u>Scanlan v. Sisto</u>, No. CIV S–09–2808 LKK CKD P, 2012 WL 1130668, at *2-3 (E.D. Cal. March 28, 2012) (unpublished) (denying motion to dismiss pro se plaintiff's pleading and

explaining that, while plaintiff had attached prison "incident reports" to his pleading, the court

"cannot accept the prison authorities' possibly self-serving statements as true on a Rule 12(b)(6)

motion to dismiss.  This is especially so when the statements directly contradict the allegations in

the complaint, as they do here.  Doing so would improperly blur the distinction between a Rule

12(b)(6) dismissal motion and a Rule 56 motion for summary judgment."); Walker v. City of

Fresno, No. 1:09–cv–1667–OWW–SKO, 2010 WL 3341861, at *3-4 (E.D. Cal. Aug. 23, 2010)

(unpublished) (denying motion to dismiss pro se plaintiff's pleading and rejecting defendant's

argument that the police reports plaintiff attached to his pleading demonstrated, as a matter of

law, that defendant police officers had a reasonable basis to enter plaintiff's home)[5]; adopted by

2010 WL 3853071 (E.D. Cal. Sept. 30, 2010) (unpublished); Rivera v. Hamlet, No. C03–962 SI

(PR), 2003 WL 22846114, at *4-7 (N.D. Cal. Nov. 25, 2003) (unpublished) (where defendants

moved to dismiss the pro se plaintiff's pleading based upon facts stated in a prison investigation

---

    [5] The Walker case is particularly analogous because it also involved a police report attached
to a pro se pleading.  See Walker, 2010 WL 3341861, at *1, 3-4.  The plaintiff in Walker alleged
violations of 42 U.S.C. § 1983 by several police officers who had allegedly entered his residence
without reasonable basis or probable cause.  Id.  Plaintiff attached the relevant police report to his
pleading.  Id. at *3-4.  Defendants moved to dismiss the pleading pursuant to Rule 12(b)(6), urging
that "[p]laintiff's claim for an unlawful entry into a residence in violation of the Fourth Amendment
should be dismissed because the police report attached to the [pleading] sets forth facts showing a
reasonable basis for the police to enter the residence."  Id. at 3.  The defendants asserted that,
"because the police report was attached to the [pleading] and the facts contained in the report
contradict [p]laintiff's allegations, [p]laintiff's allegations in his [pleading] cannot be taken as true."
Id.  The defendants also asserted that given the factual content of the police report, "their actions in
entering the apartment were reasonable as a matter of law; thus, [p]laintiff's claim for unlawful entry
in violation of the Fourth Amendment should be dismissed as a matter of law."  Id.  The court
rejected defendants' argument, explaining that:

> Although [d]efendants assert that the reasonableness of their
> entry into the apartment can be determined as a matter of
> law, the reasonableness of the officers' conduct is an issue of
> fact.  [Citation omitted.]  Defendants' argument in this
> regard is essentially that there is no genuine issue of material
> fact as to the reasonableness of the warrantless entry.
> Defendants' argument pertains to the merits of [p]laintiff's
> claim, not the sufficiency of his complaint.

Id. at 4 (citations omitted).  The court denied defendants' motion to dismiss plaintiff's claim for
warrantless entry.  Id.

1   report attached thereto, and where defendants argued that the court could rely on the report's

2   finding that defendants "needed to use physical force to restrain plaintiff" and that defendants'

3   actions were properly "justified," the court rejected the argument and held that the report's

4   contents could not be considered without converting the motion to dismiss into a motion for

5   summary judgment.)

6          Here, in moving to dismiss the pleading based on the factual content of a police

7   report attached thereto, defendant makes the same argument that the courts in <u>Walker</u>, <u>Scanlan</u>,

8   <u>Grant</u>, and <u>Rivera</u> rejected.  <u>See Walker</u>, 2010 WL 3341861, at *1, 3-4; <u>Scanlan</u>, 2012 WL

9   1130668 at *2-3; <u>Grant</u>, 2012 WL 2839832 at *2-3; <u>Rivera</u>, 2003 WL 22846114 at *4-7.  For the

10  same reasons stated in those cases, and especially given plaintiff's status as a pro se litigant who

11  has since clarified on the record that he vigorously disputes many statements made in the Police

12  Report, including statements about defendant's detection of the odor of marijuana, the

13  undersigned declines to take the Police Report as true for purposes of a Rule 12(b)(6) motion to

14  dismiss.  In other words, the undersigned rejects defendant's argument that the Police Report

15  attached to this pro se plaintiff's pleading suffices to prove, as a matter of law, that defendant's

16  conduct was "reasonable" and did not violate plaintiff's constitutional rights.

17          Nevertheless, while defendant has not thus far compellingly shown that the Police

18  Report's factual content suffices for dismissal of this action with prejudice at the pleading stage,

19  plaintiff's statements during the hearing confirm that plaintiff actually disputes more of the

20  Police Report's factual content than his pleading itself indicates.  Accordingly, for clarity and for

21  a more complete picture of the factual allegations at the center of this case, defendant's motion is

22  granted in part, and plaintiff shall file an amended pleading.  The amended pleading shall include

23  additional factual allegations that clarify whether and how plaintiff disputes the Police Report's

24  representation that defendant smelled the odor of marijuana coming from plaintiff's car, as well

25  as whether and how plaintiff disputes the Police Report's representation that plaintiff told

26  ////

13

1    defendant he had "smoked marijuana in the vehicle a short time before this contact." (Compl. at

2    7.)

3          C.      Defendant's Second Argument: Racial Remarks

4                  Defendant argues that the statements plaintiff alleges he made do not amount to

5    violations of plaintiff's constitutional rights under 42 U.S.C. § 1983, because the pleading fails to

6    "identify specific remarks" by defendant and fails to explain how such remarks "violated his

7    Constitutional Rights." (Mot. to Dismiss at 7-8.)  Defendant also argues that the pleading's

8    "naked assertion" that defendant "said racial remarks or remarks relating to race and color" is a

9    conclusory allegation insufficient to support a constitutional claim.  (Id.)

10                 Defendant is correct that conclusory allegations of "racial profiling" and the like

11   are not taken as true on a Rule 12(b)(6) motion.  See Iqbal, 556 U.S. at 678-79.  However,

12   putting aside those conclusory allegations, the complaint contains several factual allegations

13   describing defendant's alleged statements to plaintiff.  Defendant overlooks the pleading's

14   inclusion of several specific statements allegedly made by defendant, such as statements

15   regarding a crack pipe, a "doo rag," and the "rims" of plaintiff's car. (Compl. at 4-6.)  Defendant

16   has not shown that these alleged comments cannot, as a matter of law, support a claim that

17   defendant's search of plaintiff was motivated by race.  In other words, defendant has not cited

18   any authorities suggesting that comments similar to these are insufficient as a matter of law to

19   support plaintiff's constitutional claims for Rule 12(b)(6) purposes.

20                 The undersigned appreciates defendant's desire for further clarification regarding

21   all "specific statements" allegedly made by defendant to plaintiff; however, defendant can

22   certainly conduct discovery to obtain such clarification. (Mot. to Dismiss at 7-8.)  In this

23   particular case, the pleading is not so conclusory or unintelligible that it precludes discovery

24   regarding defendant's alleged statements. See Erickson, 551 U.S. at 93 (explaining that, to

25   comply with Rule 8(a), "[s]pecific facts are not necessary; the statement [of facts] need only

26   'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'")

                                                    14

(citations and internal quotations omitted).  If plaintiff's claims are based upon additional remarks not explicitly alleged in his pleading, written discovery and/or deposition(s) will reveal as much.  Accordingly, defendant has not shown that the pleading fails to state a constitutional claim because it does not "identify specific remarks," given that the pleading *does* include several specific remarks that were not addressed in defendant's moving papers, and given that defendant can conduct discovery to ascertain whether plaintiff alleges other remarks in addition to those specified in the pleading.  (Mot. to Dismiss at 7-8.)

       Contrary to defendant's framing of the pleading, plaintiff does not appear to argue that defendant's alleged statements *in and of themselves* violated plaintiff's constitutional rights. This framing appears to have arisen from the structure plaintiff attempted to give his pleading. While plaintiff's pleading includes the headings "Allegation #1" and "Allegation #2," the court construes pro se complaints liberally at the pleading stage and considers substance over form.[6] Thus, while plaintiff begins "Allegation #1" by mentioning defendant's alleged "racial comments," it does not appear that plaintiff intends to allege that those alleged comments *alone* amounted to a violation of his constitutional rights. (Compl. at 1.)  Rather, construing the allegations in plaintiff's favor, plaintiff alleges that defendant's *search* was racially motivated, and that defendant's alleged comments serve to reveal defendant's alleged racial motivation.[7]

       In any event, the so-called "Allegations" in this particular case are not necessarily discrete "claims for relief."  Plaintiff's two paragraphs labeled as "Allegation #1" and

---

[6] Pro se pleadings are typically held to a less stringent standard than those drafted by attorneys. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94. With respect to pleadings by pro se parties, the court must construe such a pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez, 203 F.3d at 1130-31.

[7] While plaintiff alleges that defendant "violate[d] 4th Amendment Right[s] by saying racial remarks or remarks relating to race and color," plaintiff further alleges that even though he showed "no signs or presence of any threat," defendant allegedly "began to detain and say obscene racial things." (Compl. at 1.)

1  "Allegation #2" both appear intended to support his claimed constitutional violations — i.e., a

2  racially-motivated, unreasonable search of his car and person — and thus the so-called

3  "Allegations" need not stand on their own as discrete "claims."

4            Accordingly, defendant's arguments regarding the alleged "racial statements" are

5  not well-taken, and the motion is denied in this regard.

6        D.      The OSC

7            As described in the "Background" section of this order, plaintiff initially failed to

8  timely oppose defendant's pending motion.  In response, the undersigned issued an OSC (ECF

9  No. 12) requiring plaintiff to explain his failure to timely oppose the motion and why he should

10  not be sanctioned.  In his Response to the OSC (ECF No. 14), plaintiff explained that he did not

11  timely oppose the motion because he never received it, and that he only learned of the motion

12  upon receiving the court's OSC.  (Id.)  In response, defendant submitted a paralegal's declaration

13  (Declaration of Rosie Ruppel ("Ruppel Decl."), ECF No. 15) disputing plaintiff's representations

14  that he had not been served with the motion to dismiss, and attaching a proof of service

15  indicating that plaintiff had indeed been timely served.  (Exh. A to Ruppel Decl.)  However, the

16  paralegal's declaration reveals that on April 3, 2013, defendant's counsel received a returned

17  envelope marked "return to sender" and with a notation that there was insufficient postage.

18  (Ruppel Decl. ¶ 6.)  Ms. Ruppel declares that she double-checked the postage amount and that

19  the postage was adequate for delivery, such that she is "unaware of any legitimate reason" that

20  plaintiff did not receive the motion via mail.  (Id. ¶ 7.)

21            In light of the foregoing, the OSC (ECF No. 12) is hereby discharged, and no

22  sanctions shall issue at this time.  The undersigned cautions plaintiff that he is obligated to make

23  sure that he is timely checking his mail and that the Clerk of the Court has his most up-to-date

24  ////

25  ////

26  ////

16

address on file.[8]  Plaintiff is also cautioned to check with his mail carrier to confirm that mailings from defendant are not inadvertently marked "return to sender" or otherwise prevented from reaching him.  Defendant, for his part, should perhaps consider using a different method of serving documents upon plaintiff if problems with mail service continue.

If case-related documents continue to be returned to defendant with "return to sender" stamped on them, the parties are obligated to communicate to resolve the problem.  For instance, on April 3, 2013, when defendant's counsel received the motion with "return to sender" stamped upon it, defendant's counsel should have attempted to reach plaintiff by phone in order to meet and confer about potentially stipulating to reset the hearing in this matter.  In the future, both parties should attempt to meet and confer regarding filings in this case when necessary.

E.     Plaintiff's Ongoing "Conflicting" Criminal Case

On May 17, 2013, plaintiff filed a "Status Report."  (Status Report, ECF No. 20.) Plaintiff appears to have written the Status Report with the input of "Rosie Ruppel," a paralegal from defendant's counsel's office.  (Id.)

In the Status Report, plaintiff represents that:

> Plaintiff is in a conflict with a criminal case that is related to the Civil Suit at hand.  Plaintiff asks the court under 28 U.S.C. § 1455 to abolish the criminal case #A39315 that's conflicting with Plaintiff's civil case.

(Id. at 4.)

During the hearing, plaintiff represented that there is an ongoing criminal case against him and proceeding in state court in Stockton, and that the charge is for driving without a valid license.  Also during the hearing, plaintiff confirmed that the charge arose in connection with the same incident at the Quik Stop alleged in his complaint in this civil case.  Plaintiff also represented that the issues as to whether Officer Meece acted with reasonable suspicion and

---

[8]  The court's electronic docket reflects that on May 23, 2013, plaintiff filed a Notice of Change of Address (ECF No. 22), altering his address of record.

1   probable cause will likely be addressed in the criminal action.

2           As discussed on the record during the hearing, plaintiff's ongoing criminal case

3   could impact this court's ability to hear this civil case.  See, e.g., Colorado River Water

4   Conservation Dist. v. United States, 424 U.S. 800, 818-19 (1976); Heck v. Humphrey, 512 U.S.

5   477, 489-90 & n.10 (1994).[9]  For instance, "if a state criminal defendant brings a federal

6   civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action,

7   *abstention may be an appropriate response to the parallel state-court proceedings.*"  Heck, 512

8   U.S. at 487 n.8 (emphasis added).[10]

9   ////

10

11      [9]    The Ninth Circuit Court of Appeals has summarized the considerations relevant to
        application of the Colorado River doctrine:
12
                    To decide whether a particular case presents the exceptional circumstances
13                  that warrant a Colorado River stay or dismissal, the district court must
                    carefully consider "both the obligation to exercise jurisdiction and the
14                  combination of factors counseling against that exercise."  Drawing from
                    Colorado River, Moses H. Cone and subsequent Ninth Circuit cases, we have
15                  recognized eight factors for assessing the appropriateness of a Colorado River
                    stay or dismissal: (1) which court first assumed jurisdiction over any property
16                  at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid
                    piecemeal litigation; (4) the order in which the forums obtained jurisdiction;
17                  (5) whether federal law or state law provides the rule of decision on the
                    merits; (6) whether the state court proceedings can adequately protect the
18                  rights of the federal litigants; (7) the desire to avoid forum shopping; and (8)
                    whether the state court proceedings will resolve all issues before the federal
19                  court.

20      R.R. Street & Co. v. Transport Ins. Co., 656 F.3d 966, 978-79 (9th Cir. 2011) (footnote and citations
        omitted).
21
        [10]   In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court held that
22      a suit for damages on a civil rights claim concerning an allegedly unconstitutional conviction or
        imprisonment cannot be maintained absent proof "that the conviction or sentence has been reversed
23      on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to
        make such determination, or called into question by a federal court's issuance of a writ of habeas
24      corpus, 28 U.S.C. § 2254."  Heck, 512 U.S. at 486.  Thus, "[i]f 'a judgment in favor of the plaintiff
        would necessarily imply the invalidity of his conviction or sentence,' then 'the complaint *must be
25      dismissed* unless the plaintiff can demonstrate that the conviction or sentence has already been
        invalidated.'"  Whitaker v. Garcetti, 486 F.3d 572, 583 (9th Cir. 2007) (quoting Heck, 512 U.S. at
26      487) (emphasis added).

1    Accordingly, within 14 days of the date of issuance of this order, plaintiff shall

2 file a Statement that includes the complete name and case number of the criminal case, the date

3 that case was filed, the charge(s) in that case, the status of that case, and all upcoming dates

4 currently scheduled in that case, including but not limited to hearing dates and trial dates.

5    F.    Plaintiff's Request To "Abolish" The Criminal Action

6    Plaintiff has asked this court to "abolish" the pending state criminal case under 28

7 U.S.C. § 1455 ("Section 1455").  (Status Report at 4.)

8    Under 28 U.S.C. 1443, a criminal defendant may remove a case to the district

9 court of the United States where the state proceeding is pending if the prosecution is "against any

10 person who is denied or cannot enforce in the courts of such State a right under any law

11 providing for the equal civil rights of citizens of the United States, or of all the persons within the

12 jurisdiction thereof."  The procedures and requirements for removal of criminal prosecutions are

13 governed by 28 U.S.C. § 1455.  Under Section 1455, "a notice of removal of a criminal

14 prosecution shall be filed not later than 30 days after the arraignment in the State court, or at any

15 time before trial, whichever is earlier," unless the petitioner can show good cause to extend the

16 filing date.  28 U.S.C. § 1455(b)(1).

17    Given plaintiff's pro se status and his passing reference to 28 U.S.C. § 1455,

18 plaintiff may be attempting to assert, under 28 U.S.C. § 1443, that he cannot obtain a fair

19 criminal trial in state court.

20    Even if plaintiff's request were timely, which the undersigned cannot determine

21 from the passing reference to Section 1455 in plaintiff's Status Report, the undersigned finds that

22 there has been no showing that plaintiff is a criminal defendant "who is denied or cannot enforce

23 in the courts of such State a right under any law providing for the equal civil rights of citizens of

24 ////

25 ////

26 ////

19

the United States, or of all persons within the jurisdiction thereof." 28 U.S.C. § 1443(1).[11] Accordingly, plaintiff's request to "abolish" the state criminal case (Status Report at 4) is hereby denied.

As expressed during the hearing, the undersigned recognizes that plaintiff faces difficulties representing himself in propria persona in federal court. However, the undersigned informs plaintiff that Eastern District Local Rule 110 provides: "Failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."[12] Moreover, Eastern District Local Rule 183(a) provides, in relevant part:

> Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law. All obligations placed on "counsel" by these Rules apply to individuals appearing in propria persona. Failure to comply therewith may be ground for dismissal . . . or any other sanction appropriate under these Rules.

E. D. Cal. L.R. 183(a).

---

[11] See, e.g., U.S. v. Serrano, No. CR 12–01056 DDP, 2012 WL 5621239, at *2 (C.D. Cal. Nov. 15, 2012) (unpublished) ("removal under § 1443(1) will only be permitted if the defendant can satisfy a two-part test. It must appear that the Petitioner is: (1) deprived rights guaranteed by federal laws providing for racial equality; and (2) denied or cannot enforce their rights in state court usually because of a state statute or constitutional provision.") (citations omitted).

[12] See also King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."). Case law is in accord that a district court may impose sanctions, including involuntary dismissal of a plaintiff's case pursuant to Federal Rule of Civil Procedure 41(b), where that plaintiff fails to prosecute his or her case or fails to comply with the court's orders, the Federal Rules of Civil Procedure, or the court's local rules. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (recognizing that a court "may act sua sponte to dismiss a suit for failure to prosecute"); Hells Canyon Preservation Council v. U.S. Forest Serv., 403 F.3d 683, 689 (9th Cir. 2005) (stating that courts may dismiss an action pursuant to Federal Rule of Civil Procedure 41(b) sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or the court's orders); Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995) (per curiam) ("Failure to follow a district court's local rules is a proper ground for dismissal."), cert. denied, 516 U.S. 838 (1995); Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992) ("Pursuant to Federal Rule of Civil Procedure 41(b), the district court may dismiss an action for failure to comply with any order of the court."), cert. denied, 506 U.S. 915 (1992); Thompson v. Housing Auth. of City of L.A., 782 F.2d 829, 831 (9th Cir. 1986) (per curiam) (stating that district courts have inherent power to control their dockets and may impose sanctions including dismissal), cert. denied, 479 U.S. 829 (1986).

III.    UNDERLINE CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that:

1.    Defendant's Motion to Dismiss (ECF No. 9) pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part.  Plaintiff's pleading is dismissed, and plaintiff shall have leave to file an amended pleading as described above herein.

2.    Plaintiff shall file an amended pleading within 60 days of issuance of this order.  The amended complaint must bear the docket number assigned to this case and must be labeled "First Amended Complaint."[13]

3.    The Order to Show Cause (ECF No. 12) is hereby discharged.

4.    Within 14 days of the date of issuance of this order, plaintiff shall file a Statement that includes the complete name and case number of the criminal case pending against him in Stockton, the charge(s) in that case, the status of that case, and all upcoming dates currently scheduled in that case, including but not limited to hearing dates and trial dates.  The Statement shall be labeled "Statement Re: Related Criminal Case Pending Against Plaintiff In State Court."

5.    Plaintiff's request to "abolish" the state criminal case (Status Report at 4) is hereby denied.

////
////
////

---

[13]  Failure to timely file an amended complaint in accordance with this order may result in dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b) and Local Rules 110 and 183(a).  Plaintiff is informed that the court cannot refer to prior pleadings in order to make an amended complaint complete.  Eastern District Local Rule 220 requires that an amended complaint be complete in itself.  This requirement is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being treated thereafter as non-existent.").  Accordingly, once a plaintiff files an amended complaint, the original complaint no longer serves any function in the case.  Defendants not named in an amended complaint are no longer defendants.  Ferdik, 963 F.2d at 1262.

21

6.      The Status (Pretrial Scheduling) Conference currently set for June 27, 2013, is hereby vacated.  The court will set a Status Conference *sua sponte* when the status of plaintiff's pleadings is finalized.

IT IS SO ORDERED.

DATED:  May 29, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

22